**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM MICHAEL BUMPUS,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. ___** |
| | § | |
| **v.** | § | |
| | § | |
| **AIR LINE PILOTS ASSOCIATION,** | § | |
| **INTERNATIONAL; and UNITED** | § | |
| **AIRLINES INC.** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**VERIFIED ORIGINAL COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**
**UNDER THE RAILWAY LABOR ACT**

### SUMMARY

1.     Plaintiff, William Michael Bumpus ("Bumpus"), brings this Complaint against the Air Line Pilots Association, International ("ALPA") and United Airlines Inc. ("UAL"), for declaratory judgment and for injunctive relief under the Railway Labor Act 45 U.S.C. §§ 151 *et seq.* ("RLA"), in the form of an order to *compel an arbitration hearing* of plaintiff's contract grievance before a System Board of Adjustment for a ruling by a single neutral arbitrator, and alleges the following:

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, because this case arises under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, a federal statute regulating interstate commerce.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) because subject-matter jurisdiction is not founded on diversity of citizenship and this District is a district where a substantial part of the events giving rise to plaintiffs' claims occurred, where both defendants in this action may be found, and/or where both defendants do business: ALPA as an unincorporated labor organization and UAL as an incorporated business.

## PARTIES

4.      Plaintiff, William Michael Bumpus ("Bumpus"), is a natural person who resides at 11 NW 730th Road, Warrensburg, Missouri 64093, who is a commercial airline pilot with the rank of First Officer who was hired and furloughed by UAL and who belongs to a craft or class represented by ALPA, and who now seeks recall to his job at UAL.

5.      Bumpus is an "employee" with the meaning of, and covered by, the RLA. 45 U.S.C. §§ 151, Fifth.

6.      Defendant ALPA is an unincorporated labor organization. It is headquartered at 7950 Jones Branch Drive, Suite 400S, McLean, Virginia 22102.  ALPA maintains an office in this district where it acts through its "UAL Master Executive Council" located at 9550 W. Higgins Road, Suite 1000, Rosemont, Illinois 60018.

7.      ALPA is the certified bargaining representative for the United Airline pilots and a "representative" labor union subject to the provisions of the RLA. 45 U.S.C. §§ 151, Sixth; 181.

8.      Defendant UAL is a commercial air carrier and corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business at 233 South Wacker Drive, Chicago, Illinois 60606.

9.      UAL is a "common carrier" by air, engaged in interstate or foreign commerce, and is subject to the provisions of the RLA. 45 U.S.C. §§ 151, First; 181.

## STATEMENT OF FACTS

### *The Origin Of Plaintiff's Minor Dispute:*

10.     ALPA is the largest pilot union in the world and has represented the pilots at UAL since at least 2000.

11.     UAL is a major US airline and by some measures the third largest in the world.

12.     ALPA and UAL are together parties to the current, applicable pilots' collective bargaining agreement ("contract" or "labor agreement") entered into pursuant to the RLA, also known as the "United Pilot Agreement (UPA)", attached as **Exhibit 1**.

13.     For decades prior to the current contract, ALPA and UAL have been parties to a succession of RLA-governed contracts covering the Pilots craft or class.

14.     Plaintiff Bumpus was first hired as a Pilot by UAL on June 11, 2000.

15.     Bumpus' work station is Denver, Colorado.

16.     Bumpus went on military leave in 2001 and was administratively returned early to be furloughed on March 2, 2002 with a recall window of 7 years ending March 2, 2009 under the then applicable contract.

17.     Bumpus was administratively separated, reinstated and re-furloughed in 2009, which under the then applicable contract reset and extended his recall window from this second furlough on March 2, 2009.

18.     In 2013 UAL offered Bumpus a "final" recall with recall rights extending until the end of 2015; the recall package included a copy of a pending furlough mitigation agreement between United and ALPA to extend the new recall window to ten years from the date of furlough.

19.     As a result Bumpus made inquiries with UAL about his employment status.

20.     In an email dated November 5, 2015, the UAL Senior Manager for Pilot Hiring

Programs and Furlough Return Coordinator, Bill Kennedy, responded to Bumpus' inquiry by declaring that having "dug deeper into your case" he was able to confirm that Bumpus' "furlough recall window" did indeed extend until March 2, 2019.

21.     In January of 2019, Bumpus contacted both UAL and ALPA to inform them that he was in the process of obtaining an FAA review of his medical flight status and to request an extension of his March 2, 2019 recall date.

22.     In response to Bumpus' request for an extension of his recall date, both UAL and ALPA ultimately *misinformed* Bumpus to the effect that his recall rights had already expired.

23.     Then, on February 1, 2019, ALPA Senior Labor Relations Counsel, Jeff Loesel, informed Bumpus that his employment had been terminated in 2007 following a mandatory recall.

24.     Nevertheless, with time running out on Bumpus' recall rights and amidst confusion regarding his true status, in February 2019 ALPA spoke to UAL on Bumpus' behalf and secured a tolling agreement of his recall rights.

25.     The tolling agreement provided that, in the event that it was confirmed that Bumpus had contractual recall rights though March 2, 2019, those recall rights would be extended until such time as Bumpus successfully obtained his first class medical certificate.

26.     On February 4, 2019, UAL Coordinator Flight Operations and Pilot Hiring Programs, Alexa Dolan, wrote Bumpus to "apologize in advance for the confusion on our end" but went on to state that "through research and communication with Manpower Planning and ALPA, we were informed your eligibility to remain on the United seniority list expired in March 2012, and therefore you are not eligible for furlough recall."

27.     However, had UAL and ALPA concurred at this time that Bumpus' recall rights were still in effect and so would extend until March 2, 2019, then UAL would have tolled the

timeline for Bumpus to assert his recall rights – and the March 2, 2019 deadline would not be enforced.

28.     Instead – due to the joint, albeit *erroneous*, position of UAL and ALPA that Bumpus' recall rights had earlier expired, whether in 2007 or 2012 – Bumpus understood that his application for a medical leave at that time would be futile.

29.     Bumpus went on to obtain a FAA special issuance dated February 27, 2020.

30.     Thereafter Bumpus obtained his First Class medical on June 15, 2020.

31.     Then, on November 14, 2020, Bumpus learned that UAL was apparently honoring the recall rights of pilots furloughed in 2008-09 based on a new round of furloughs that had occurred during that timeframe.

32.     As a result, and based on Bumpus' seniority and the number of pilots furloughed, Bumpus then strongly suspected that he had been furloughed a second time in 2009.

33.     Bumpus also then discovered archived ALPA communications from 2019 that had encouraged 2009 furloughees to exercise their recall rights.

34.     So, for the first time, on November 14, 2020, Bumpus discovered that the furlough recall rights of similarly situated pilots were being honored.

35.     It was only as of November 14, 2020 that Bumpus knew that UAL's representations in Dolan's email of February 4, 2019 were incorrect.

36.     And, it was only as of November 14, 2020 that Bumpus knew that ALPA's legal counsel's assertion that his recall rights extended until March 2, 2019 was *not* a "a clear and obvious error in United's records."

### *Plaintiff's Grievance Regarding His Contractual Recall Rights Raise A Minor Dispute:*

37.     Through his attorney, Lee Seham, Bumpus filed a written grievance asserting his

contractual recall rights on March 2, 2021, attached as **Exhibit 2**, which included a request for a Board "staffed by a single arbitrator without the inclusion of either union or company representatives to ensure that the final decision is rendered in a fair and unbiased manner."

38.     Defendants accepted Bumpus' grievance and started processing it according to the terms of the parties' labor contract, designating it "ALPA Case No 2021-U-33-012R."

39.     Prior to Bumpus' Level 1 Grievance hearing, UAL provided partial copies of his employment records that showed that Bumpus' recall rights extended to March 2, 2019.

***Defendants Refuse to Convene A System Board of Adjustment to Hear Plaintiff's Grievance:***

40.     On April 8, 2021, a Level 1 grievance hearing was convened (virtually) and presided over by UAL's Denver Chief Pilot, Captain Rob Biddle.

41.     The Level 1 grievance hearing was attended by Bumpus and his attorney but without any ALPA representative participating.

42.     A written decision by Chief Pilot Biddle, dated April 22, 2021, denied Bumpus' grievance after his Level 1 hearing – but conceded that Bumpus in fact had full recall rights through March 2, 2019, attached as **Exhibit 3**.

43.     On May 2, 2021, Bumpus timely and properly exercised his contractual rights to appeal Chief Pilot Biddle's Level 1 denial.

44.     On May 18, 2021 ALPA senior labor relations counsel, Nathan Eisenberg, wrote to Bumpus through his attorney, Seham, to assert, in part, that Bumpus' grievance was "contractually baseless and untimely" and that it would be "inconsistent" with ALPA's duty "to represent all pilots in the craft and class" to "support" Bumpus' grievance and that "ALPA will be presenting this information to United during the upcoming appeal hearing", attached as **Exhibit 4**.

45.     A hearing pursuant to Bumpus' appeal was held on May 21, 2021 presided over by

UAL Managing Director of Crew Resources and Contract Administration, Paul Carlson.

46.     Managing Director Carlson issued a written decision dated June 18, 2021 again denying Bumpus' grievance but stating that "[i]f you are dissatisfied with this decision, under terms of Section 17-A-7 of the UPA, you may appeal the matter to the System Board of Adjustment within thirty (30) days of receipt[.]", attached as **Exhibit 5**.

47.     On July 2, 2021, Bumpus through his attorney filed with ALPA a "submission to the United Airlines Pilots' System Board of Adjustment by First Officer William Bumpus ALPA Case No. 2021-U-33-012R", attached as **Exhibit 6**, seeking to represent himself through his attorney at his own expense.

48.     On July 14, 2021, ALPA through Joseph Pedata, Chairman of ALPA's UAL MEC Grievance Committee, wrote to Bumpus' attorney, attached as **Exhibit 7**, taking the position that only ALPA "and not an individual grievant" had a right to appeal to the System Board of Adjustment, and thus gain access to an arbitration hearing.

49.     On July 15, 2021, Bumpus through his attorney responded to Pedata with a letter asserting both contractual and statutory grounds for Bumpus' access to the System Board of Adjustment and demanding that ALPA "agree to desist from any effort to interfere with or frustrate" Bumpus' "right of appeal", attached as **Exhibit 8**.

50.     On July 22, 2021, Pedata responded to Bumpus through his attorney in a letter overtly denying Bumpus had any individual right to access an arbitration hearing before the parties' System Board of Adjustment (no matter how constituted), but providing no supporting legal authority (in contrast to Bumpus' July 15 letter) for the assertion that "ALPA also disagrees with your statutory claim that Mr. Bumpus has the right to submit his grievance to the System Board …", attached as **Exhibit 9**.

51.     On August 13, 2021 Pedata wrote to Bumpus to announce that it was the ALPA UAL MEC's "decision not to submit your grievance to the System Board of Adjustment" but advising him of the opportunity to appeal the denial, within ALPA, to the UAL MEC Grievance Review Panel, attached as **Exhibit 10**.

52.     On August 20, 2021, Bumpus made a timely written request for a hearing before ALPA's UAL MEC Grievance Review Panel, attached as **Exhibit 11**.

*53.*     On correspondence spanning from September 24 to October 10, 2021, attached as **Exhibit 12**, First Officer Joseph Pedata, UAL MEC Grievance Committee Chairman, continued to indicate that ALPA would not schedule a timely Grievance Review Panel leaving Bumpus no further contractual or internal union route to access the System Board of Adjustment that would satisfy the six-month limitations period applicable under the Railway Labor Act.

### *ALPA Is In Breach Of Its Own Policy:*

54.     Since at least 2009, ALPA's general practice or policy has been to provide access to System Boards of Adjustment based on a statutory right under the RLA for individual access.

55.     ALPA's policy of general access by individuals was stated in a 2009 ALPA Legal Department training presentation titled "Duty of Fair Representation: Overview Recent and Current Cases", attached as **Exhibit 13**

### *Futility Of Further Contractual Or Internal Proceeding And Basis For Injunctive Relief:*

56.     ALPA's documented opposition to Bumpus' grievance, both on putative procedural and merits-based grounds, coupled with its flat refusal to allow him access to arbitration before the parties' System Board of Adjustment even at his own expense is in breach of its own policy and renders futile any further efforts by Bumpus to access the Board on his own.

57.     UAL adopted ALPA's position in a July 20, 2021 email, attached as **Exhibit 14**, thus effectively colluding with ALPA to block Bumpus from access to arbitration before the

parties' System Board of Adjustment, which amounts to a repudiation of the grievance/arbitration process.

58.     UAL's denial of the merits of Bumpus' grievance together with ALPA's refusal to appeal his grievance to the System Board of Adjustment and ALPA's overt hostility to Bumpus in the form of interference with, and denial of, his individual statutory rights – renders any hearing before the Board that is not ruled upon by a single neutral arbitrator unfair and contrary to the requirements of the RLA.

59.     Bumpus faces a substantial threat of irreparable injury without a court order giving him access to arbitration decided by a single neutral arbitrator presiding over the parties' System Board of Adjustment (even with non-voting partisan members seated) because there is no other forum that can vindicate his contractual recall rights or the procedural issues of arbitrability as raised by ALPA, leaving the only alternative a federal wrongful termination action to vindicate his statutory rights. Independent Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 692 (3rd Cir. 1998) (in addition to exclusive jurisdiction over the merits of a minor dispute the Board also has jurisdiction over questions of "procedural arbitrability"); Cf. Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry., 956 F.2d 156 (7th Cir. 1992).

60.     Bumpus has a substantial likelihood of success on the merits of his statutory claim to vindicate his individual right under the RLA to access the System Board of Adjustment in order to resolve his minor dispute raised by his acknowledged contract grievance. Elgin Joliet & Eastern Railway Co. v. Burley et al., 325 U.S. 711, 733 (1945) (individual employee's rights are statutory rights, which he may exercise independent of the union); Santiago v. United Airlines, 969 F. Supp. 2d 955, 966 (N.D. Ill. 2013) (concluding that "any provisions in the CBA purporting to subject that right [to file a grievance] to the '[union's] approval are invalid and unenforceable");

Cunningham v. United Air Lines, 2014 WL 441610, at *4 (N.D. Il. Feb. 4, 2014) (same); *see also*, Capraro v. UPS Company, 993 F.2d 328, 336 (3rd Cir. 1993) ("It necessarily follows that an employer and a union, through a negotiated collective bargaining agreement, cannot deprive a category of employees of access to grievance and arbitration process"); Miklavic v USAir, Inc, 21 F.3d 551 (3rd Cir 1994) (concluding that airline employees are entitled to proceed to arbitration on their own behalf); Kaschak v. Consolidated Rail Corp., 707 F.2d 902, 909-910 (6th Cir. 1983) ("The RLA contemplates the presence of three entities: the employer, the individual employee and the union representative of the collective employees. The rights of the individual employee as against the employer are not coextensive with those of the union; each party under the statute maintains a distinct right to enforce the obligations of the other two"); Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1052, n.9 (11th Cir. 1996) ("individual airline employees *are* entitled to convene special boards of adjustment as a matter of statutory right"); Pratt v. United Air Lines, Inc., 468 F. Supp. 508, 513 (N.D. Cal. 1978) (under the RLA, "the Union does not have exclusive control over grievances"); Stevens v. Teamsters Local 2707, 504 F. Supp. 332, 336 (W.D. Wash. 1980) (finding that the union's withdrawal of individual grievances was in reckless disregard of the statutory rights of the plaintiffs to pursue their own grievances); Smyj v. Consolidated Rail Corp., 1986 U.S. Dist. LEXIS 29876 (S.D.N.Y. 1986).

61.     Bumpus also has a substantial likelihood of success on the merits of his statutory RLA claim because a court order is "necessary to preserve the jurisdiction of the grievance procedure". BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail &amp; Transp. Workers - Transp. Div., 973 F.3d 326, 337 (5th Cir. 2020).

62.     The balance of hardships favors an order compelling arbitration of Bumpus' grievance before the parties' System Board of Adjustment with the ruling to be determined by a

---

neutral arbitrator alone because no party would be prejudiced by a fair hearing interpreting and applying the *parties'* contract to Bumpus' grievance especially where both parties can present their own case to the Board, either through advocates of their choice.

63.     The public interest favors an order compelling arbitration of Bumpus' grievance before the parties' System Board of Adjustment, with the ruling to be determined by a neutral arbitrator alone, because the public has an interest in facilitating a declared purpose of the RLA, which is to "provide for the prompt and orderly settlement of all disputes growing out of the interpretation or application of agreements covering rates of pay, rules or working conditions." 45 U.S.C. § 151a(5).

64.     No prior application for the relief sought herein has been made.

## COUNT I

### Against ALPA and UAL:

### Violation Of The Statutory Right To Arbitration Under The Railway Labor Act

65.     Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs, inclusively.

66.     This action is governed by the RLA, 45 U.S.C. §§ 151 *et seq*.

67.     Defendants ALPA and UAL were at all times under a *statutory* RLA duty, pursuant to § 204 of the RLA, 45 U.S.C. § 184, to establish and to maintain a System Board of Adjustment to hear grievances in arbitration:

> It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this subchapter, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153. 45 U.S.C. § 184.

68.     Defendants ALPA and UAL were at all times under a *statutory* RLA duty, pursuant

to § 204 of the RLA, 45 U.S.C. § 184, to allow employees to refer disputes, which have otherwise

not been resolved, to the parties' RLA-mandated System Board of Adjustment established by the

parties' collective bargaining agreement:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on April 10, 1936 before the National Labor Relations Board, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes. 45 U.S.C. § 184.

69.     Under the RLA, disputes regarding "the interpretation or application of agreements

concerning rates of pay, rules or working conditions," are known as "minor disputes." 45 U.S.C.

§ 184; Elgin, Joliet & E. Ry. Co. v. Burley, 325 U.S. 711, 722-23 (1945).

70.     The RLA provides that minor disputes fall within the "mandatory, exclusive and

comprehensive" arbitration jurisdiction of the appropriate board of adjustment. Bhd. of

Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 36-38 (1963); Andrews v.

Louisville & Nashville R.R., 406 U.S. 320, 323-24 (1972).  A decision of the Board of Adjustment

is final and binding.

71.     Federal courts have the authority under the RLA to compel arbitration of minor

disputes regarding the interpretation or application of collective bargaining agreements. W.

Airlines v. Int'l Bhd. of Teamsters, 480 U.S. 1301, 1302 (1987) (a court may compel arbitration

of a minor dispute before a system board even though the court lacks authority to interpret the

terms of a collective bargaining agreement).

72.     Plaintiff's grievance over asserted contractual recall rights constitutes a "minor

dispute" within the meaning of the RLA that is subject to the exclusive jurisdiction of the System

Board of Adjustment. 45 U.S.C. §§ 151 *et seq*.

73.     Any dispute over either the contractual merits or the contractual arbitrability of plaintiff's grievance constitutes a "minor dispute" within the meaning of the RLA that is subject to the exclusive jurisdiction of the System Board of Adjustment. 45 U.S.C. §§ 151 *et seq*.

74.     Plaintiff is an aggrieved airline employee with a *statutory right under the RLA to pursue his grievance individually, apart from ALPA*, and thus is entitled to access to the RLA-mandatory System Boards of Adjustment established by ALPA and UAL collective bargaining agreement, with representation of his choice in the hearing, at his own expense, for this purpose:

> [t]he employee's rights cannot be nullified merely by agreement between the carrier and the union.  They are statutory rights, which he may exercise independently or authorize the union to exercise in his behalf. <u>Elgin Joliet & Eastern Railway Co. V. Burley et al.</u>, 325 U.S. 711, 740 (1945) (*citing* 45 U.S.C. § 152, Sixth; 45 U.S.C. § 153 First (i); 45 U.S.C. § 153 First (j)).

45 U.S.C. § 184.

75.     Defendants have each and together opposed the relief requested in plaintiff's grievance on its merits, or on procedural arbitrability grounds, or both.

76.     Defendants have each and together *refused* to convene a System Board of Adjustment to arbitrate plaintiff's grievance and *declared* that plaintiff has no statutory right to access the Board.

77.     The defendants' conduct in refusing to convene a System Board of Adjustment violates the plaintiff's individual, statutory rights under the RLA to arbitrate his grievance. 45 U.S.C. § 184.

78.     The defendants' conduct in jointly declaring their implacable opposition to plaintiff's grievance also renders *futile* any hearing before a System Board of Adjustment that is not impartial because it is dominated by a vote of partisan Board members who could override a

neutral arbitrator by majority vote, thus rendering plaintiff's statutory right illusory.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court issue:

A.     An order i) compelling the defendants to convene an impartial System Board of Adjustment to arbitrate plaintiff's grievance with representation of plaintiff's own choosing at his own expense, with ii) a Board constituted to render an impartial ruling determined by a neutral arbitrator alone (whether sitting alone or with non-voting partisan Board members); and

B.     A judgment pursuant to 28 U.S.C. 2201 and 2202 declaring the rights of the parties; and

C.     An award of reasonable attorneys' fees and costs of the plaintiff.

D.     Retain jurisdiction to ensure that defendants fully comply with any and all orders of this Court.

E.     Granting such other and further relief as is just and proper, including reasonable attorney's fees and the costs and disbursements of this proceeding.

Dated: <u>October , 2021</u>          Respectfully submitted,

***/s/ Kerry E. Saltzman***
**WILLIAMS, BAX & SALTZMAN, P.C.**
Kerry E. Saltzman, Esq.
Saltzman@wbs-law.com
221 N. LaSalle St., Suite 3700
Chicago, IL 60601
(312) 372-3311 (office)
(773) 295-4211 (direct)

*Local counsel*

and

**SEHAM, SEHAM, MELTZ & PETERSEN, LLP**
Lee Seham, Esq. (*pro hac vice* pending)
lseham@ssmplaw.com
Nicholas Granath, Esq. (*pro hac vice* pending)
Email: ngranath@ssmplaw.com
Tel. (914) 997-1346
199 Main Street, Seventh Floor
White Plains, NY 10601

*Attorneys for Plaintiff*
*William Michael Bumpus*

## <u>VERIFICATION</u>

I, William Michael Bumpus, declare the following:

      1.      I am the plaintiff in this action.

      2.      I have read the foregoing; know the contents thereof; and verify under penalty of perjury that the foregoing is true and correct.

Executed on <u>October 15, 2021</u>

***/s/ William Michael Bumpus***
William Michael Bumpus
